I'd like to hear from the parties in Mussallihattillah v. McGinnis. I hope I pronounced the name correctly. Sir, Mr. Mussallihattillah, you are the appellant here. We're happy to hear from you. Yes, indeed. I thank you for the honor of being here this morning. I'd like to start off by saying, reading from my items here, that should take less than two minutes. And maybe leave some time for rebuttal. How much time would you like to leave for rebuttal? Your assignment? I think maybe I will have like three minutes or maybe two minutes. Do you want three minutes or two? Tell us specifically. Three minutes. Three minutes for rebuttal. I will try. So you have seven minutes now. We will try to, if it's less than three, I would like to complete this and then continue. Seven minutes. Okay. Well, I will probably need at least eight minutes, so I think I better continue. We'll keep track of the time. I thank you very much. Most of the, first of all, let me find. As noted, the district court's evidentiary rulings are reviewed for an abuse of discretion. I believe there was an abuse of discretion, namely in that I was denied the ability to call witnesses and also that inadmissible character evidence was used to render the district court's decision. I was also denied the opportunity to redirect and rebut defendants' assertion that I was a bad employee. Because of this, the court accepted time in attendance as well as disciplinary records from the defendants as a factor in the decision that I did not perform my job satisfactorily. Additionally, I believe that I did produce evidence which would have shown by preponderance of the evidence that there was an inference of discrimination in my dismissal. Also, Richardson versus New York State Department of Correctional Services states, a state agency's immunity may be lost in two ways. The second way states, a state may waive its immunity and agree to be sued in federal court. As the record will show, I did not get to call witnesses who could attest to the fact that I did perform my work satisfactorily. This allowed the defendants to rely solely on character, inadmissible character evidence to claim that I was not performing my job satisfactorily. The case cited by the defendants, United States versus Bell regarding character evidence, actually applies to a jury verdict and not a bench trial. As noted in the other case cited by defendants, United States versus Miller under the federal rules evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I believe that my witness, Abdul Kabir, would have provided evidence relevant to a deciding factor in the court's decision, which whether I perform my work satisfactorily, which would have concluded that I, whether I would have performed my work, I was performing my work satisfactorily. The defendants overlooked the fact that their increase in disciplinary scrutiny were directly related to discriminatory practices against me. I am alone the only Muslim African American at Southport Correctional Facility. Indeed, this was my inherent assertion. Most of the disciplinary rulings were not upheld by the arbitrator. This is important since receiving notices of discipline is not evidence of misconduct by an employee. Also, an arbitrated decision against an employee cannot necessarily be used to judge an employee's overall performance. I received a notice of discipline 82799. This was after I requested family medical leave for a date I attended my wife. On court orders, I visited an office the same day regarding a lawsuit against the defendants. A visit to an office does not preclude that I was also caring for my wife. The arbitrator's opinion did not determine that I deceived my employer by requesting family medical leave for that day. And instead, the discipline amounted to a fair warning. As to the second, the arbitrator decision regarding 11299 notice of discipline upheld only an inadvertent violation of contraband regulations, which had to do with harmless materials, harmless items. Some copied items for an inmate and segregation. Harmless items. And shortly before the hearing for this discipline, the defendants questioned me regarding it. In his decision to dismiss the charge, the arbitrator stated, he did so because the only evidence to support it Regarding the third dated 41901, with reference to the disciplines used inadmissively, the court commented that the actions of the inmates during the incident could not be considered a boycott. I didn't encourage any boycott. I did not do anything but comply with all of what my employer's supervisor had asked me to do at the time regarding an inmate claim boycott. But the court says that that was not a boycott. Indeed, the court, instead, it was, according to the court, it was the personal prerogative of the inmates to choose not to attend a non-obligatory event. Therefore, the court sustained that I had not committed any violation. Yet, as a result of this notice of discipline, I was unfairly dismissed. I believe the discipline was directly related to my being an African American and a Muslim. Finally, the notice of discipline, dated 82701, which was mentioned during the trial in the defense appellate brief, was settled without the need for arbitration and was removed from my file. In other words, it does not exist. It should not even have been in court. It does not exist. Throughout my tenure at Southport Correctional Facility, my file will show that none of my employee evaluations were less than satisfactory. In fact, evaluations graded unsatisfactory by my supervisor Larry Weingartner were all, without exception, upgraded to satisfactory upon appeal through the PEPF union. Therefore, my records at Southport have conclusively shown that I was a satisfactory employee. And not a bad employee. In conclusion, I believe that an abuse of discretion was involved in admitting character evidence against me. And by denying me opportunity to call a witness to testify to my character. I also believe that I met the appropriate burdens of proof of McDonnell Douglas test and I wish to be granted, and wish to be granted, an opportunity to further pursue my case by calling witnesses and proffering further evidence to support my discrimination claims. All right, you used nine minutes. You'll have a minute to rebut after we hear from the other side. Thank you very much. You're welcome. May it please the court, Frederick Brody for the appellees. In December 2001, a neutral labor management arbitrator upheld plaintiff's termination for misconduct. Specifically, as prison chaplain, plaintiff attended a meeting at which inmates planned a group boycott of an event. But then, plaintiff refused to provide his supervisor with details of the meeting. That was the third time in 15 months that arbitrators had upheld, at least in part, a notice of discipline against plaintiff. Against that background, plaintiff sued his supervisor, Larry Weingartner, and Southport superintendent, Michael McGinnis, for racial and religious discrimination. After plaintiff rested his case at trial, the district court granted defendant's motion for judgment as a matter of law. That judgment should be affirmed because plaintiff failed to prove the elements of his claim by a preponderance of the evidence. First of all, the evidence showed that plaintiff was not performing his job satisfactorily. Plaintiff's unsatisfactory job performance was established by the multiple instances of discipline that were upheld by arbitrators. Those are detailed at pages 4 to 10 of our brief, and they're also in the defendant's appendix. But I want to focus on the one that plaintiff focused on, which was that the neutral arbitrator's finding that he was guilty of disobeying a direct order to provide information about a group boycott by inmates. Now, plaintiff says court found it was not a boycott. I would submit the court found no such thing. Now, perhaps plaintiff is speaking loosely and saying the arbitrator found it wasn't a boycott. In that event, I would direct the court to page 37 of defendant's appendix, where the arbitrator found as follows. The grievance testimony not only shows he provided misinformation, but it also shows that the inmates were unanimously telling him that they would refuse to attend the festival unless the facility changed its policy on family attendance. That's a boycott, whether the grievance chooses to recognize it or not. And the arbitrator further wrote on pages 39 to 40 of the defendant's appendix, that prison administration must be provided with information from staff that would allow it to address a potential hotspot between it and the inmates. The results of the State's inability to do so may be disastrous. That was what the arbitrator found. That was why the arbitrator upheld Mr. Musli-Hathala's finding of firing. And I would also note that nowhere in the record is there any Article 75 challenge to these arbitrations. These arbitrations were held. Plaintiff was found guilty in each of the three arbitrations cited in our brief. And that was the end of it. And those arbitrations should be or are subject to collateral estoppel or race judicata treatment, at least on the fact that plaintiff committed misconduct. As far as discrimination is concerned, plaintiff did not show at trial that his termination was motivated by race or religion. The evidence didn't show that other employees with similar records of misconduct but of a different race or religion were treated differently from plaintiff. Plaintiff admitted at trial, and this is at ECF No. 79 at page 166, he admitted that he lacked knowledge of the disciplinary record of any other employee. His witness, Paul Nardi, saw no difference in the way plaintiff was treated with respect to time or attendance than any other chaplain. Plaintiff's other witness, Agatha Peters, believed his time and attendance were more than those of anyone else, meaning regardless of race or religion, he was scrutinized more. Now, that doesn't show discrimination. It's consistent with the overwhelming evidence that plaintiff was frequently late or absent from work. Let me address briefly plaintiff's proposed character witness, Kabir Abdul. Judge Larimer did not abuse his discretion in excluding that proffered witness. Now, I should say that when plaintiff says that he was not allowed to call any witnesses, that's obviously false. There is transcript of two witnesses who he called and who were examined and cross-examined. The third one, Kabir Abdul, was offered to testify to his reputation as an imam. Now, Mr. Abdul, and this is critical, plaintiff conceded that Mr. Abdul was not employed at Southport and he did not observe plaintiff's work there. That's at ECF number 78 at page 69. So, therefore, Mr. Abdul had no relevant knowledge of plaintiff's performance. Plaintiff's reputation as an imam was not relevant. How do we know it's not relevant? We can look at the district court's decision, and the district court says nothing of plaintiff's character or reputation. So, therefore, we know it wasn't relevant to the district court's ultimate decision. Finally, I want to address immunity under the 11th Amendment, and in that connection, I want to amplify a point that was made on page 1 of our appellate brief at footnote 2. We argued in footnote 2 that the State's immune from an award of damages under the 11th Amendment. Under this Court's precedent, raising 11th Amendment immunity in our brief was sufficient to protect the State and to preserve the point. And we cite the Richardson v. Dock's case, 180F3-426 at page 449, where I believe this Court held that it's okay to raise 11th Amendment immunity on remand, and that still preserves the issue. So you do not have what Mr. Mussolini-Hatala characterized as a waiver of immunity. We did assert it in our answer, albeit as an affirmative defense only to common law claims, but then in our appellate brief we said, you know what, it's a defense to everything, and I think this Court's precedent allows us to expand it into a defense to everything. So that takes care of the State. As far as Mr. McGinnis and Mr. Weingartner are concerned, there was no evidence that either of them possessed a discriminatory animus or took any discriminatory action against plaintiff, and thus there was a failure of proof at trial. Unless Individual capacities, are they subject to Title VII liability? I don't — well, they're State employees, and they were sued for violation of civil rights under 1983. Under 1983, they were. Under 1983, yes. They weren't sued under Title VII, as far as I'm aware. Okay. Unless the Court has any further questions, we're prepared to rest on the briefs. Thank you. Thank you. Ms. Latula, you have a minute to respond. Your Honor and respected judges, the attorney for the defendants actually is incorrect. The Judge Laramiere, during our court trial, he mentioned that he did not see that this claim boycott was a boycott at all. It was a boycott at all. In fact, he insisted that he would not accept it as a boycott, and it is on record. Where are you citing that one? I'm sorry. I do have it in my . . . In Judge Laramiere's opinion. Right. Okay. We'll look for it. Thank you. Right. In reference to time in attendance, it is very clear that time in attendance were being actually enhanced improperly by the defendants, and that was in part the difficulty of not being able to have a chance to rebuttal and to proffer my argument or have redirect on that occasion that I was expecting. I was actually expecting redirect. I was told by the judge that he would allow for me to have redirect along with my closing argument. I was told that, and I was expecting that. That did not happen. And there's no way that the argument that was mostly based on character reference of trying to describe me as a poor employee and then not having me come forward to give an argument against that, that would not have been fair, and that would not have allowed me to receive my full satisfaction before the court. All right. Thank you. We'll take the case under advisement and give it our consideration. That's the last case on the calendar, so we stand adjourned. Thank you all.